J-S01013-15
J-S01014-15
J-S01015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  G.C., a Minor | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  C.C., Natural Mother | No. 999 WDA 2014 |

Appeal from the Order entered May 23, 2014,
in the Court of Common Pleas of Bedford County, Orphans'
Court, at No(s): CP-05-DP-0000013-2010, No. 23 for 2012

| | |
|---|---|
| IN THE INTEREST OF:  G.C., a Minor | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  BEDFORD COUNTY CHILDREN AND YOUTH SERVICES | No. 1001 WDA 2014 |

Appeal from the Order entered May 23, 2014,
in the Court of Common Pleas of Bedford County,
Orphans' Court Division, at No(s): CP-05-DP-0000013-2010,
No. 23 for 2012

| | |
|---|---|
| IN THE INTEREST OF:  G.C., a Minor | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  G.C., a Minor | No. 1002 WDA 2014 |

Appeal from the Order entered May 23, 2014,
in the Court of Common Pleas of Bedford County,
Orphans' Court Division, at No(s): CP-05-DP-0000013-2010,
No. 23 for 2012

BEFORE:    GANTMAN, P.J., JENKINS and MUSMANNO, JJ.

J-S01013-15
J-S01014-15
J-S01015-15

MEMORANDUM BY MUSMANNO, J.:                    **FILED APRIL 29, 2015**

C.C. ("Mother"), G.C. ("Child"), through his guardian *ad litem* ("GAL"), and Bedford County Children and Youth Services ("CYS" or the "Agency"), appeal from the May 23, 2014 Order granting CYS's Petition to involuntarily terminate Mother's parental rights to Child, who was born in July 2009, pursuant to section 2511 of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b), and changing Child's permanency goal to adoption with respect to Mother, pursuant to section 6351(f) of the Juvenile Act, 42 Pa.C.S.A. § 6351(f). The Order further denied the involuntary termination of the parental rights of T.C. ("Father"), and the denial of the change of Child's permanency goal as to Father. We affirm the termination of Mother's parental rights and the change of goal to adoption as to Mother, and reverse and remand, in part, with regard to Father's parental rights and goal change, with directions to the trial court to apply the appropriate standard in its bond analysis.

The trial court adequately and accurately set forth the factual background and procedural history of these appeals in its Opinion entered on May 23, 2014. We set forth only as much of the factual background and procedural history as is necessary to our disposition of the appeals.

On October 15, 2012, CYS filed its Petition to Terminate the parental rights of Mother and Father to Child, and to change the permanency goal for

- 2 -

Child to adoption. The trial court held hearings relating to the Petition on April 16, 2013, May 15, 2013, May 31, 2013, August 7, 2013, October 8, 2013, February 26, 2014, and March 18, 2014, and made the following factual determinations:

> [Mother] is 44 years of age[,] having been born [in 1970]. [Father] is 52 years of age[,] having been born [in 1962]. The parties met on [*sic*] 2008 and were married [in March 2009] in Winchester, Virginia. Both parties have grown children from previous relationships. [Father] also has two other minor children both of whom [*sic*] he has regular contact. The parties' final separation was November 17, 2010, although they periodically still have contact. As noted, the minor child, [G.C.], was born [in July 2009]. [Mother] had DUI convictions in 1992, 2005, and 2013. As was noted, the case began with reports of her being under the influence of alcohol while acting as sole care provider for [Child].

Trial Court Opinion, 5/23/14, at 9.

On August 7, 2010, Child was removed from his parents' home and placed in foster care. *Id.* at 3. On August 20, 2010, Child was returned to the physical custody of Father, but remained in protective custody. *Id.* On November 5, 2010, Child was adjudicated dependent, and physical custody was given to Child's parents. *Id.*

On December 7, 2010, Child was removed from his parents' physical custody for a second time, based on an argument between the parents, and he was placed in foster care. *Id.* at 5. Pursuant to a Consent Order entered on May 4, 2012, the trial court returned Child to his parents' shared physical custody, as the parents were separated at that time. *Id.* at 6. On June 20,

- 3 -

2012, Child was taken into protective custody, the shelter care hearing was continued, and Father was granted physical custody of Child in the interim. *Id.* at 7.   On July 11, 2012, the trial court returned physical custody to the parents on a shared basis, with provisions.  *Id.* at 7-8.  On July 24, 2012, CYS filed a Petition for emergency protective custody.  *Id.* at 8.  The trial court granted interim physical custody to Mother, with Father to have periods of supervised physical partial custody, pending a hearing.  *Id.*   After the hearing, on August 14, 2012, the trial court entered an Order continuing CYS's legal custody of Child, granting Mother physical custody, and granting Father periods of supervised partial physical custody.  *Id.*

One week later, on August 22, 2012, CYS filed a Petition for emergency protective custody, based on Mother's testing positive for Klonopin on July 16, 2012, and for alcohol on July 26, 2012.  *Id.*   The trial court explained that,

> [M]other successfully wore an alcohol monitoring ankle bracelet (SCRAM) and remained alcohol free from February[] 2012 through May of 2012.  However, as noted, on July 16, 2012[,] [Mother] tested positive for Klonopin, a controlled substance she did not have a prescription for[,] and[,] on July 26, 2012[,] [Mother] tested positive for alcohol.

*Id.* at 9-10.

On August 24, 2012, the trial court entered an Order continuing legal custody with CYS, granting physical custody to CYS, and continuing to Order that the parents engage in random drug testing.  *Id.* at 8-9.  On October 15,

- 4 -

2012, CYS filed its Petition to involuntarily terminate the parental rights of Mother and Father, and to change Child's permanency goal to adoption. Thus, Child has been in and out of foster care since early August 2010, and has remained in foster care since August 2012.

After the completion of the hearings, on May 23, 2014, the trial court issued its Order involuntarily terminating Mother's parental rights to Child and changing Child's permanency goal to adoption with regard to Mother, while denying the involuntary termination of Father's parental rights to Child, and refusing to change Child's permanency goal to adoption with regard to Father.[1]

On June 18, 2014, CYS filed a Notice of Appeal, but failed to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i). On June 19, 2014, the trial court entered an Order directing CYS to file a concise statement within twenty-one days. On June 20, 2014, Mother filed a Notice of Appeal, and a Concise Statement. On June 23, 2014, the GAL filed a Notice of Appeal and Concise Statement.[2]

---

[1] Father timely appealed the May 23, 2014 Order, which we docketed at No. 1000 WDA 2014. Father withdrew his appeal on November 5, 2014.

[2] On June 23, 2014, CYS filed its Concise Statement. **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) (addressing the effect of Pa.R.A.P. 905(a)(2), and observing that there is no *per se* rule mandating quashal or dismissal of a defective notice of appeal in children's fast track cases, *i.e.*, when the concise statement does not accompany the notice of appeal, and no party is prejudiced thereby).

Mother presents the following issues for our review:

A. Whether the Trial Court erred and/or abused its discretion in determining that [] CYS established a legal basis for terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b)?

B. Whether the Trial Court erred and/or abused its discretion in determining that the conditions leading to placement of [Child], substance abuse, and acrimony between the [] parents[,] continue to exist and will not be remedied, given that such findings are not supported by the record?

C. Whether the Trial Court erred and/or abused its discretion in determining that "[Mother] invariably returns to excessive drinking," and using such as a basis for terminating her parental rights, given that the record does not support such a determination?

D. Whether the Trial Court erred and/abused its discretion by failing to consider [Mother's] efforts at rehabilitation with regard to her alcohol abuse?

E. Whether the Trial Court erred/abused its discretion by failing to determine the effect of severing the bond between [Mother] and [Child], given such consideration is required under 23 Pa.C.S.A. § 2511(b)?

Mother's Brief at 3.[3]

CYS presents the following issues on appeal:

1. Whether the Trial Court erred as a matter of law or committed an abuse of discretion by denying [CYS's] request to change the goal to adoption for [Father?]

___

[3] In her Concise Statement, and in the Statement of Questions Involved section of her brief, Mother does not challenge the change of goal to adoption. Accordingly, Mother has waived this issue. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's statement of questions involved and concise statement is deemed waived).

2. Whether the Trial Court erred as a matter of law or committed an abuse of discretion by denying [CYS's] Petition to [T]erminate the parental rights of [Father] … under § 2511(a)(5)[?]

3. Whether the Trial Court erred as a matter of law or committed an abuse of discretion by denying Bedford County Children and Youth's Petition to terminate the parental rights of [Father] … under § 2511(a)(8)[?]

4. Whether the Trial Court erred as a matter of law or committed an abuse of discretion by failing to consider the overwhelming evidence that established that the developmental, physical and emotional needs and welfare of [Child] would best be served by changing the goal to adoption for [Father] and by terminating the parental rights of [Father?]

5. Whether the Trial Court erred as a matter of law or committed an abuse of discretion by denying permanency for [Child?]

* * *

9. Whether the competent evidence was presented to support the trial court's determination that custody of [Child] should not be returned to [Father?]

Brief for CYS at 22-23.[4]

Child, through the GAL, raises the following claims for our review:

1. Whether the Trial Court erred when termination of [F]ather's parental rights and change of goal to adoption was denied, where the evidence established that [F]ather willingly failed to perform even basic parental duties; refused to take any steps to remedy the conditions which led to [Child's] placement; and

---

[4] Although CYS framed issues 1 through 5 somewhat differently in its Concise Statement, we conclude that the issues are sufficiently preserved for appellate review. Issue 9, which is directly related to those issues, was implicitly preserved for review. Issues 6 through 8 address the termination of Mother's parental rights, which we will addressed in the context of Mother's appeal.

- 7 -

where, with overwhelming evidence established that termination and change of goal to adoption was in [Child's] best interest under § 2511 of the Adoption Act (23 Pa.C.S.A. § 2511), specifically[,] 23 Pa.C.S.A. § 2511(a)(2); []23 Pa.C.S.A. § 2511(a)(5); and []23 Pa.C.S.A. § 2511(a)(8)[?]

2. Whether the Trial Court erred by failing to evaluate the nature and strength of the emotional bond and relationship of Child with the parents and foster parents giving primary consideration to the developmental, physical and emotional needs and welfare of the child per 23 Pa.C.S.[A.] § 2511(b)[?]

3. Whether the Trial Court erred/abused its discretion by using contradicting and/or erroneous information when developing its factorial [*sic*] analysis in the Memorandum Opinion dated May 23, 2014[?]

4. Whether the Trial Court erred/abused its discretion since the original filing of the Petition for Involuntary Termination of Parental Rights/Change of Goal to Adoption in 2012; by denying [Child] permanency[,] even after the final [O]rder dated May 23 2014[,] by terminating [M]other's parental rights and changing the goal to adoption, but fail[ing] to terminate [F]ather's parental rights; which denied [Child] the opportunity to be adopted[?]

5. Whether the Trial Court erred as a matter of law or committed an abuse of discretion by denying [CYS's] request to change the goal to adoption for [Father?]

6. Whether the Trial Court erred as a matter of law or committed an abuse of discretion by denying [CYS's] Petition to terminate the parental rights of [Father] … under § 2511(a)(5)[?]

7. Whether the Trial Court erred as a matter of law or committed an abuse of discretion by denying [CYS's] Petition to terminate the parental rights of [Father] … under § 2511(a)(8)[?]

8. Whether the Trial Court erred as a matter of law or committed an abuse of discretion by failing to consider the

overwhelming evidence that established that the developmental, physical and emotional needs and welfare of [Child] would best be served by changing the goal to adoption for [Father] and by terminating the parental rights of [Father?]

Brief for GAL, at 22-24.[5]

On appeal from the termination of parental rights, we review the appeal in accordance with the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *In re R.I.S.*, [613 Pa. 371, 455,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-55], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at

---

[5] Although the GAL did not directly raise issues 5 through 8 in her Concise Statement filed on behalf of Child, we do not find that she waived the issues, as they are implicit in the preserved issues. *See Krebs*, 893 A.2d at 797.

> 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The trial court terminated Mother's parental rights under section 2511(a)(2), (5), (8), and (b). We will focus on section 2511(a)(2) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. ***In re Adoption of M.E.P.***, 825 A.2d

1266, 1272 (Pa. Super. 2003); *accord In re Adoption of S.P.*, 47 A.3d at 827. The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.
>
> *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 891 (Pa. 1986) (*quoting In re: William L.*, 477 Pa. 322, 383 A.2d 1228, 1239 (Pa. 1978)).

*In re Adoption of S.P.*, 47 A.3d at 827.

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d at 337. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to review whether the requirements of subsection (b) are satisfied. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa.

Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *Id.* at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently explained that

> if the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

In conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). As this Court has observed, no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008).

Here, the trial court rendered the following findings with regard to

Mother:

> In July of 2013 [Mother] appeared intoxicated for a supervised visit with [Child; M]other concedes this. The next day she went back to the Agency to recover a cell phone; at that time she appeared intoxicated and was administered a breathalyzer test which produced a reading of .289%.
>
> Kay Fair, the custody supervisor, testified on October 18, 2013 [*sic*] that at the visits in the summer of 2013 [Mother], in her opinion, was sober for one-half the visits and under the influence for the other half of the visits. The [c]ourt suspended [Mother's] periods of supervised partial custody in August of 2013. (Order of August 7, 2013).
>
> [A.R.], [Mother's] grown daughter[,] testified on October 8, 2013[,] that [Mother] . . . had a drinking problem when the witness was being raised by her. [A.R.] conceded when [Child] was born, [Mother] would drink alcohol[,] but [A.R.] and her older sister "were around." [A.R.] also admitted that [Mother] was intoxicated before the placement and[,] since placement[, A.R.] had seen [Mother] drink alcohol. [A.R.] agrees . . . [that M]other had been drinking prior to her July, 2013 supervised visit. [A.R.] also stated [that Child] was always excited to see [Mother]. The Agency concedes [that Mother] maintains a clean and tidy residence[,] which is stocked with adequate food. [Mother] also admitted in her testimony on October 8, 2013 that[,] in 2012[,] her drinking was out of control. The Agency presented a report from a laboratory stating that on July 26, 2012, [Mother] had alcohol in her system. (Plaintiff's exhibit #1).

Trial Court Opinion, 5/23/14, at 10 (some paragraph breaks added).

As to Father, the trial court rendered the following findings:

> [Father] is a self[-]employed painting contractor. [Father] works regularly[,] taking him away from home during the week. It was this circumstance that left [Child] at home with [Mother] much of the time. [Father] testified[,] on October 16, 2012[,]

- 14 -

that he suffers from chronic pain due to a back injury and also hip problems. His physician has him on a methadone regime to alleviate the pain. [Father] concedes [that] at times[,] due to his condition[,] he has run out of medication a day early. At the February 26, 2014 hearing[, Father] stated the [d]octor has increased his methadone. [Father] further concedes that[,] as a result of his injury[,] … he did have a drug abuse problem between 2005 and 2007. [Mother,] in her testimony[,] indicated that at times after their separation, [Father] would occasionally use coke or cocaine after [Child's] birth and after their separation. [Mother] said [that Father] did not use these substances on a regular basis and[,] at times[,] he would use her prescription medicine.

Drug testing by the Probation Office was presented by way of a document submitted by the Probation Office. [Father] was subject to random drug testing from September 2010 through August of 2013. In November and December of 2010[, Father] tested positive for cocaine. This is consistent with [Mother's] testimony. [Father] also tested positive for cocaine in May of 2011. [Father] did test positive for benzodiazepine a number of times[;] however, except for four occasions[, Father] had prescriptions for said substance. From May 13, 2011[,] through August 8, 2013, [Father] did not fail any drug test. Those times he tested positive for benzodiazepine he had a valid prescription. As in the Mother's case[,] the Agency had no objections to the condition of [] Father's home. The Agency has requested [that Father] undergo evaluation for drug and alcohol treatment. But each time [Mr. Kashurba] did not feel that [Father] was in need of treatment.

Dennis Williamson ["Mr. Williamson"], Director of Family Counseling, testified in the case. [Father], at the Agency's request, contacted Mr. Williamson for counseling in mid-2012. The Agency wished [Father] to undergo counseling for stress management and anger. [Father] attended 12 sessions. In these sessions, Mr. Williamson did not witness any uncontrolled loss of temper. [Father] paid $50.00 per session. Mr. Williamson noted that [Father] was patient with [Child] and nothing in the sessions indicated he could not parent [Child]. Mr. Williamson testified he has had 33 years of practice in counseling parents with a focus on fathers. Mr. Williamson was

present at a team meeting on August 8, 2012. Representatives were present from Alternative Community Resource Program (ACRP) and Mental Health/Mental Retardation (MH/MR). At this meeting[,] the Father walked out in a fit of anger after 15 minutes. Mr. Williamson observed the occurrence after [Father] was informed of the Agency's intention to possibly seek termination of his parental rights. Mr. Williamson said he believed the Father's leaving was an error. But [the] [c]ounselor's impression was that [Father] felt he was being "railroaded" by the Agency. When asked, the [c]ounselor stated that [Father] has never appeared impaired at any of his counseling sessions.

An issue was also raised regarding [Father's] financial support for [Child]. [Father] is subject to a child support [O]rder regarding [Child] … for 2011. A review of this file shows that in the last three years[, Father] has paid $22,655.87 in child support. It is also true that [Father] has at times been held in contempt for non-payment, but has paid civil contempt purge amounts several times. He is currently $4,086.56 in arrears, but has made regular support payments throughout the history of the case.

Trial Court Opinion, 5/23/14, at 11-13 (some paragraph breaks added, citation omitted).

The trial court made the following determinations with regard to Child's bond with both natural parents and with his foster parents:

Both the Agency and the parties presented bonding assessment information. The Agency presented the testimony of Dennis Kashurba ["Mr. Kashurba"]. Mr. Kashurba was qualified as an expert in child behavior. Mr. Kashurba did an initial bonding assessment on September 17, 2012[,] and an addendum on March 19, 2013. [Mr. Kashurba] found that [Child] does have an emotional bond with his biological parents[,] but his bond … is at least as strong with the foster parents and probably a stronger bond as he has resided with the foster parents for approximately one-half of his life. Further, greater stability exists with the foster parents. The addendum

report of March 19, 2013[,] was based on reports provided by the [CYS] case supervisor. A review of these documents indicated a behavioral regression on [Child's] part. However, on [cross-examination, Mr. Kashurba] conceded he had not been provided with copies of the reports of the visits between [Child] and the biological parents. (Hearing April 16, 2013, page 21, lines 5-9). Further counsel for the biological parents was not made aware by the Agency personnel that a supplementary report was being prepared.

The parents called Peggy Nadenichek ["Ms. Nadenichek"] as their expert. There was no objection to her testimony in the area of child behavior. Ms. Nadenichek indicated that there was[,] in fact[,] a bond between [Child] and [Mother]. (April 16, 2013, page 40, lines 15-16). [Ms. Nadenichek] stated [that,] based on her observation of [Mother] and [C]hild[,] there was an existing bond. (April 16, 2013, pages 43, line 25; and 44, line 1). Regarding [Father], [Ms. Nadenichek] noted [that Child] referred to [Father] as "Daddy [T.]". (April 16, 2013, page 48, lines 8-10). [Ms. Nadenichek] described the contact between Father and [Child] "as vibrant, playful and imaginative, very affectionate". (April 16, 2013 page 48, lines 14-17). Further in her conversations with [Father, Ms. Nadenichek] stated she found nothing in [Father's] responses that gave her any concerns. (April 16, 2013, page 52, lines 8-21).

The current foster parents are anxious to proceed with an adoption. The Agency and the [GAL] support adoption by the foster parents.

Trial Court Opinion, 5/23/14, at 13-14 (some paragraph breaks added).

The trial court made the following determinations with regard to the termination of Mother's parental rights under section 2511(a)(2) and (b):

Regarding [Mother], the record demonstrates clearly that the Agency has met its burden. The record supports that Mother clearly has a bond with [Child]. However, [Mother's] consistent and long[-]term abuse of alcohol shows [that] she is incapable of providing a safe environment for [Child]. This is most convincingly indicated by the July, 2013 visit when [Mother] appeared intoxicated for a supervised visit with [Child].

> [Mother] can[,] for periods of up to several months, control her abuse of alcohol[;] however, inevitably she returns to excessive drinking. [Child's] bond with the foster mother, who is anxious to adopt [Child], is very strong. It is reasonable under these circumstances to consider [Child's] bond with the foster family. *In Re: T.S.M., a minor*, 71 A.3d [at 268.] The fact of an existence of a bond between parent and child will not necessarily result in a denial of termination of parental rights. *In Re: K.K.R.S.*, 958 A.2d 529[, 535] (Pa[.] Super[.] 2008). In this case the injury to [Child] resulting from termination is far outweighed by the benefits gained by the adoption into a stable home. For these reasons[,] regarding [Mother's] interest[,] the [c]ourt will change the goal to adoption and terminate her parental rights.

Trial Court Opinion, 5/23/14, at 15-16.

The evidence supports the trial court's finding that Mother's continued incapacity, abuse, neglect or refusal to parent could not or would not be remedied, as she continued to have problems with alcohol abuse. The record is replete with evidence of the instances in which Mother failed to maintain sobriety, even with the knowledge that her ability to parent Child was at stake. Mother's argument, regarding section 2511(a)(2), essentially asks this Court to substitute our credibility and weight determinations for those of the trial court. While Mother may claim to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d at 1121.

The evidence reflects that Mother has failed to "exhibit [the] bilateral relationship which emanates from the parent['s] willingness to learn appropriate parenting . . . ." *In re K.K.R.S.*, 958 A.2d at 534. A child's life

- 18 -

"simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.P.*, 994 A.2d at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004). Here, the record reflects that Child was removed from Mother's care on multiple occasions, and often, very close together in time. Our careful review discloses that the trial court's credibility and weight determinations are supported in the record, as is its termination of Mother's parental rights under section 2511(a)(2).

The competent evidence of record also supports the trial court's finding that there is no positive bond between Child and Mother worth preserving that would cause Child harm, if severed. *See In re T.S.M.*, 71 A.3d at 270-71. CYS presented evidence that Child has been removed from Mother's care on repeated occasions, only to be placed again in foster care. In addition to finding that Child has a stronger bond with his foster parents than with Mother, the trial court found that Child's foster care parents wish to adopt Child, provide him with stability, and satisfy all of Child's emotional needs and welfare. As the trial court's determinations regarding section 2511(b), with regard to Mother, are supported by the competent evidence of

record, and we discern no abuse of discretion or error in this regard, we affirm the trial court's involuntary termination of Mother's parental rights to Child.

Similarly, the change of goal from reunification to adoption, as to Mother, is supported by the evidence of record. In a change of goal proceeding, the best interests of the child, and not the interests of the parent, must guide the trial court, and the parent's rights are secondary. *In re A.K.*, 936 A.2d 528, 532-33 (Pa. Super. 2007). The burden is on the Agency to prove the change in goal would be in the child's best interests. *In the Interest of M.B.*, 674 A.2d 702, 704 (Pa. Super. 1996). For the same reasons addressed in the trial court's bond analysis, the change of goal to adoption, as to Mother, is supported in the record and we discern no abuse of discretion or error in this regard.

We next address the appeals filed by CYS and the GAL. CYS claims that the trial court improperly denied termination of Father's parental rights, where Father had failed to meet any of the goals established by CYS. Brief for CYS at 32. CYS directs our attention to evidence that Father "had never completed an anger management program, that he continued to test positively for drugs for which he was not prescribed, and that he had not completed a drug treatment program." *Id.* at 32 (citing N.T., 5/31/13, at 49, 50). According to CYS, Father consistently denied having a drug

problem. Brief for CYS at 34. CYS further points out evidence that Father

became angry when a caseworker attempted to discuss his failed drug

screen. *Id.* at 34 (citing N.T., 5/31/10, at 15-16).

> The GAL argues that Father
>
> was using drugs and having anger issues[,] resulting in domestic violence in the home; and those issues continued as follows: (a) October 2010-Positive for Valium which was not prescribed[, *see* N.T., 5/31/13, at 12]; (b) November 2010-Altercation between [Mother] and [Father] resulting in [Mother] sustaining a broken ankle when [Father] pushed her down the stairs[, *see id.* at 13-14]; (c) December 2010-Drug screen came back positive[, *see id.* at 14-15, 21-23]; (d) December 21, 2010-Screaming at and becoming angry with caseworker[, *see id.* at 14-16]; (e) As of December 2010[,] there were nine drug screens where three were positive for [c]ocaine and [b]enzodiazepine and four were refusals in that [Father] failed to appear[, *see id.* at 17]; (f) July 2, 2012-[Father] became very nasty/angry with [Child] and called [Child] a little bastard[, *see id.* at 28-29]; [(g)] July 2, 2012-[Mother] reported that [Father] stole some of her prescription medication[, *see id.* at 29]; [(h)] July 24, 2012-drug screen positive for benzodiazepine[, *see id.* at 32].

Brief for GAL at 35-36 (citation reformatted).

Our review discloses that CYS sought termination of Father's parental

rights pursuant to, *inter alia*, subsection (a)(2). In denying the Petition to

terminate Father's parental rights, the trial court stated the following:

> As to [Father], the picture is not as clear. [Father] is gruff talking and has lost patience with [CYS] and at times this [c]ourt. But there is little to indicate that [Child] does not have a healthy and happy relationship with [Father]. [Child] has been removed from [Father's] care over concerns with drug usage[;] however, as noted above, he suffers from a back injury, does hard manual labor, and frequently works out of state. There is some evidence [that] at times[, Father] takes more methadone

- 21 -

than recommended by the [d]octor, and at times when he cannot get a prescription filled[,] he will take some pain medicine without a prescription. However, there is almost no evidence of *impairment* [at] any time[,] especially those periods he exercised custody. The [c]ourt does not attempt to justify [Father] taking valium without a prescription, but the fact remains [that Father] frequently works out of state, and may well have difficulty getting a prescription refilled. It should be noted that from February 28, 2011 through January 23, 2012[, Father] had a prescription for Benzodiazepine. Given the positive bond existing between Father and son[,] and given that [Father] has regularly paid support and exercised custody when allowed by the [c]ourts to do so; it is not in [Child's] best interest to terminate [Father's] parental rights. In regards to change of goal and termination in the Father's case[,] the [P]etition is denied.

Trial Court Opinion, 5/23/14, at 19-20. In summary, the trial court denied termination because (1) it found Father's drug usage excusable; (2) Father exhibited no impairment during visits with Child; (3) there is a positive bond between Father and Child; and (4) Father regularly paid support. *See id.*

Upon review, the palpable conflict and error in the court's reasoning leads us to reject its determination under section 2511(a)(2). Although the trial court recognized that Child was removed from Father's custody because of his drug usage, it overlooked or excused uncontroverted evidence that Father had not completed any drug treatment program, as requested by CYS, and had failed drug screening tests. *See* N.T., 5/31/13, at 49 (wherein CYS presented testimony that Father had failed to complete a drug treatment program); *see id.* at 15, 17, 21-23, 32 (wherein evidence was presented regarding Father's failed drug screens). The trial court excused

- 22 -

the failed drug screening tests because, it reasoned, there was no evidence that Father had cared for Child while impaired. Trial Court Opinion, 5/23/14, at 19. We conclude that such reasoning is flawed, given this Court's discussion in *In re Z.P.*

In *In re Z.P.*, this Court recognized that "[n]either the language of the Act, nor our case law, supports [the] position that Section 2511(a)(2) requires a showing that a putative parent have an opportunity to inflict substantial physical or mental harm upon a child before the state can intervene[.]" *In re Z.P.*, 994 A.2d at 1117. Given Father's history of drug usage, and Child's removal based, in part, upon such usage, the trial court's reasoning in this regard is flawed, and constitutes an abuse of discretion.

Contrary to the trial court's conclusion, the evidence of record demonstrates that Father is not capable of meeting the essential needs of Child and will be unable to do so within a reasonable time. Further, the clear, convincing, competent evidence of record supports the termination of Father's parental rights under Section 2511(a)(2).

If a ground for termination is demonstrated by clear and convincing evidence under Section 2511(a), the court next considers whether termination is in the best interests of the child pursuant to subsection (b). Regarding the bond analysis,

> [t]he "utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond.

However, as discussed below, evaluation of a child's bonds is not always an easy task.

The Superior Court has emphasized that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition. "[E]ven the most abused of children will often harbor some positive emotion towards the abusive parent." "The continued attachment to the natural parent, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding."

Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents.

* * *

[C]ontradictory considerations exist as to whether termination will benefit the needs and welfare of a child who has a strong but unhealthy bond to his biological parent, especially considering the existence or lack thereof of bonds to a pre-adoptive family. As with dependency determinations, we emphasize that the law regarding termination of parental rights should not be applied mechanically, but instead always with an eye to the best interests and the needs and welfare of the particular children involved. . . . Obviously, attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact. Similarly, while termination of parental rights generally should not be granted unless adoptive parents are waiting to take a child into a safe and loving home, termination may be necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home.

In weighing the difficult factors discussed above, courts must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an

obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children.

*In re T.S.M.*, 71 A.3d at 267-69 (citations omitted).

Here, the trial court denied termination "given the positive bond existing between Father and [Child] and given that Father has regularly paid support and exercised custody when allowed by the Courts to do so[.]" Trial Court Opinion, 5/23/14, at 19-20. As stated above, the trial court's consideration of Father's child support compliance was improper. Further, the trial court's bond analysis is incomplete, as the court failed to consider and weigh the positive bond it found between Child and the foster parents, and the stability and care provided by the foster parents. The trial court's reliance upon Father's bond with Child, alone, fails to meet the requirements of section 2511(b).

As the trial court's section 2511(b) analysis is, at best, incomplete, we are constrained to reverse the trial court's Order denying CYS's Petition and change of goal as to Father, and remand the matter for the trial court's application of the appropriate standard in its section 2511(b) bond analysis. On remand, the trial court may take additional evidence, if necessary, to comply with this directive.

Order granting Petition and goal change as to Mother affirmed. Order denying Petition and goal change as to Father reversed. Case remanded for

further proceedings consistent with this Memorandum. Superior Court

jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/2015